1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  EDWARD ANTHONY THROOP,                          CASE NO. 08CV2109-MMA (CAB)

12                                    Plaintiff,    **ORDER GRANTING IN PART**
                                                    **AND DENYING IN PART**
13          vs.                                     **DEFENDANTS' MOTION TO**
                                                    **DISMISS**
14  SECRETARY OF CORRECTIONS, et al.,
                                                    [Doc. No. 34]
15                                   Defendants.

16          Plaintiff Edward Anthony Throop, a state prisoner proceeding *pro se* and *in forma pauperis*,

17  filed the instant action for alleged violations of his civil rights pursuant to 42 U.S.C. § 1983. (Doc. No.

18  1.) On November 30, 2009, Plaintiff filed a first amended complaint ("FAC"). (Doc. No. 32.) On

19  January 4, 2010, Defendants M. Bourland, M. Cate, E. Fischer, J. Gentry, R. Nelson, Jr., T. Ochoa,

20  R. Parilla, M. Ruff, L. Scribner, K. Shomura, G. Stratton, M. Tamayo, and J. Tyree filed a motion to

21  dismiss the FAC. (Doc. No. 34.) On March 19, 2010, Plaintiff filed an opposition to Defendants'

22  motion (Doc. No. 39), and on August 4, 2010, Defendants filed a reply in support of their motion to

23  dismiss (Doc. No. 47). For the reasons set forth herein, the Court **GRANTS IN PART** and **DENIES**

24  **IN PART** Defendants' motion to dismiss.

25  ///

26  ///

27  ///

28  ///

## BACKGROUND

Plaintiff's claims arise out of events between 2006 and 2008 that resulted in and are related to his placement and retention in the Security Housing Unit ("SHU") at Calipatria prison on the basis of his association with a prison gang, the Mexican Mafia ("EME"). In 2003, Plaintiff was transferred from Calipatria prison to the SHU at Tehachapi Prison after he received disciplinary charges for an altercation with prison officials at Calipatria. Plaintiff alleges that he was then transferred back to Calipatria prison as a pre-trial detainee so he could face felony charges for the in-custody offense of battery on a peace officer in Imperial County Superior Court. (*FAC* at ¶ 44.) Plaintiff alleges that while he was completing his disciplinary term in the Administrative Segregation Unit ("ASU") at Calipatria, Defendants began the process of validating Plaintiff as an associate of EME. (*Id.* at ¶ 45.) Plaintiff alleges that after the jury reached its verdict, prison officials promised to not pursue his indeterminate placement in SHU as a validated gang member. (*Id.* at ¶ 46.) Plaintiff alleges that at two October 2006 hearings, the Institutional Classification Committee panel elected to release Plaintiff to General Population ("GP") and transfer him to another prison facility. (*Id.* at ¶ 49.) Plaintiff alleges, however, that on November 16, 2006, Defendants cancelled Plaintiff's transfer to GP and ordered that he be placed into the SHU at Calipatria for an indeterminate amount of time based upon his alleged association with EME. (*FAC* at ¶ 60.) Plaintiff asserts that the decision to place him in SHU was based a dubious gang validation process in violation of the rights guaranteed to him under the Due Process Clause of the Fourteenth Amendment. (*FAC* at ¶¶ 125–127.) Plaintiff also alleges that Defendants acted in retaliation for Plaintiff's complaints of misconduct against Calipatria officials that he alleged in prison grievances filed in 2004 and a subsequent civil rights complaint filed in this Court in October 2006. (*Id.* at ¶¶ 50–53.)

Plaintiff also contends that he is unable to leave SHU until he agrees to debrief. (*Id.* at ¶ 64.) Debriefing is a process by which an inmate denounces his membership in a prison gang and provides information to prison officials about gang activity. (*Id.* at ¶¶ 62–68, 109.) Plaintiff asserts that some of the source items used to validate him as an associate of EME are directly related to the charges for which Plaintiff was a pretrial detainee, and for which he has since been convicted and is appealing. Plaintiff contends that in order to debrief, he will be required to discuss these particular source items,

1   thereby forcing him to waive his Fifth Amendment right against self-incrimination, as well as his Sixth

2   Amendment right to counsel. (*Id.* at ¶¶ 64–67, 73, 108–109.) Plaintiff also alleges generally that the

3   process of debriefing and his placement in SHU constitute cruel and unusual punishment in violation

4   of the Eighth Amendment. (*FAC* at ¶¶ 112–120.)

5   **LEGAL STANDARD**

6   **I.      Federal Rule of Civil Procedure 12(b)(6) – Motion to Dismiss**

7           A complaint survives a motion to dismiss if it contains "enough facts to state a claim to

8   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The

9   court reviews the contents of the complaint, accepting all factual allegations as true, and drawing

10  all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072

11  (9th Cir. 2005). Notwithstanding this deference, the reviewing court need not accept "legal

12  conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009).  Moreover, it is

13  improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not

14  alleged." *Associated General Contractors of California, Inc. v. California State Council of*

15  *Carpenters*, 459 U.S. 519, 526 (1983).  Accordingly, a reviewing court may begin "by identifying

16  pleadings that, because they are no more than conclusions, are not entitled to the assumption of

17  truth." *Ashcroft*, *supra*, 129 S. Ct. at 1950.

18          "When there are well-pleaded factual allegations, a court should assume their veracity and

19  then determine whether they plausibly give rise to an entitlement to relief." *Id.*  A claim has "facial

20  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

21  inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.  "The plausibility

22  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

23  a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are 'merely consistent

24  with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

25  entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

26  **II.     Pro Se Litigants**

27          *Pro se* litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154

28  F.3d 952, 957 (9th Cir. 1998) (en banc). The Ninth Circuit has declined, however, to ensure that

district courts advise pro se litigants of rule requirements. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364-67 (9th Cir. 1986) ("*Pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record . . . it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant."); *see also King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) ("Pro se litigants must follow the same rules of procedure that govern other litigants."). When the plaintiff is appearing *pro se*, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2001); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). In giving liberal interpretation to a *pro se* complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**DISCUSSION**

**I.      Monetary damages against Defendants in their official capacities**

Defendants first move to dismiss Plaintiff's claims to the extent he seeks monetary damages from Defendants in their official capacities. It is well-established that the Eleventh Amendment bars a prisoner's Section 1983 claims for monetary damages against state actors sued in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). In his opposition, Plaintiff concedes that he is only seeking damages against Defendants Tamayo, Tyree, Parilla, and Nelson in their individual capacities, and that he does not seek damages from any Defendants in their official capacities. (*Pl.'s Opp'n* at 18.) Based on Plaintiff's concession and the fact that claims for damages against individuals in their official capacities are barred by the Eleventh Amendment, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES** all claims for damages against all Defendants in their official capacities **with prejudice** and **without leave to amend**.

**II.     Retaliation**

Plaintiff asserts that his SHU confinement was retaliation for a prior protected activity. (*FAC* at ¶¶ 50–53, 104–105.) The Constitution provides protections against "deliberate retaliation" by prison officials for an inmate exercising his right to petition for redress of grievances.

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989).

In order to state a claim for retaliation, a plaintiff suing prison officials for retaliation pursuant to Section 1983 must allege sufficient facts to establish the following five elements: (1) a state actor took some adverse action against an inmate, (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights and (5) was not narrowly tailored to advance a legitimate correctional goal. *See Rhodes v. Robinson*, 380 F.3d 1123, 1130 (9th Cir. 2004) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).

Here, Plaintiff alleges that he had been approved for a transfer from SHU to GP, but that after he filed a civil rights complaint and mailed the complaint and a request for injunctive relief to Defendant Scribner, Defendants cancelled his transfer. (*FAC* at ¶¶ 50–52.) Defendants assert that Plaintiff's retaliation claim is subject to dismissal because he has not alleged facts to support the following elements: (1) chilling of Plaintiff's protected activities; (2) lack of a legitimate correctional goal; and (3) causation. (*Defs.' Mot. to Dismiss* at 3:20–4:28.)

Defendants contend that Plaintiff's retaliation claim fails because he has not alleged any facts regarding harm or that Defendants' conduct otherwise chilled his protected activities. "[A]ny retribution visited upon a prisoner due to his decision to engage in protected conduct is sufficient to ground a claim of unlawful First Amendment retaliation—whether such detriment 'chills' the plaintiff's exercise of his First Amendment rights or not." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Thus, "[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." *Vernon*, 255 F.3d at 1127 (emphasis added). However, "[w]ithout alleging a chilling effect, a retaliation claim without allegation of other harm is not actionable." *Id.* Plaintiff asserts in his opposition that he sufficiently alleged that Defendants' conduct chilled his protected activity. (*Pl.'s Opp'n* at 4.) Plaintiff relies on one paragraph in his FAC, in which he states that he is no longer able to socialize with other inmates in SHU "under arbitrary threat of new gang association allegations." (*FAC* at ¶ 15.) The inquiry, however, is

centered on whether Defendants' conduct has chilled Plaintiff from exercising his right to file or pursue his prison grievances. The Court finds this allegation insufficient to allege that his rights were chilled.

As already noted, however, an allegation of harm, rather than of chill, may be a sufficient basis for a claim of retaliation. *Rhodes*, *supra*, 408 F.3d at 569–70. Here, Plaintiff alleges that Defendants cancelled his transfer to GP as a result of his protected activity. The Court finds that cancelling a transfer to GP and retaining a prisoner in SHU is sufficient harm to state a claim for retaliation. *See, e.g.*, *Rhodes*, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); *Bruce v. Y1st*, 351 F.3d 1283, 1288 (9th Cir. 2003) (retaliatory validation as a gang member for filing grievances); *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status); *Rizzo v. Dawson*, 778 F.2d 527, 530–32 (9th Cir. 2985) (finding that plaintiff stated a retaliation claim when he alleged he was removed from a vocational class). Thus, the Court finds Defendants' contention that Plaintiff has not adequately alleged harm is without merit.

Second, Defendants contend that Plaintiff has failed to allege that the cancellation of his transfer was not grounded in any legitimate, penological goal. Plaintiff's allegations belie Defendants' contention. Plaintiff frequently alleges that the cancellation of his transfer had no legitimate penological purpose. (*See, e.g.*, *FAC* at ¶ 105.) The Court finds these allegations sufficient.

Finally, Defendants contend that Plaintiff has failed to allege facts to establish the causation element of his retaliation claim. To some extent, the Court agrees. Plaintiff states that he mailed the request for injunctive relief to Defendant Scribner, "which Defendant Ochoa later wrote a letter in response that was mailed to Plaintiff." (*FAC* at ¶ 52.) While Plaintiff does not allege who actually cancelled his transfer, Plaintiff alleges that the decision to cancel his transfer occurred within days of him mailing the request for injunctive relief. (*Id.* at ¶¶ 49–50.) Timing can properly be considered as circumstantial evidence of retaliatory intent. *Pratt v. Rowland*, 65 F.3d

802, 808 (9th Cir. 1994). In addition to the suspicious timing, Plaintiff alleges facts to sufficiently

link Defendants Scribner and Ochoa to the cancellation of his transfer. The Court, however, finds

no basis in the FAC for Plaintiff to maintain his retaliation claim against any other Defendants.

Plaintiff has not alleged any facts to suggest that any other Defendant played any role in the

cancellation of his transfer. Accordingly, the Court **GRANTS IN PART** Defendant's motion and

**DISMISSES** Plaintiffs' retaliation claim against all Defendants except Defendants Scribner and

Ochoa **with leave to amend**.[1]

### III.  Violation of Fifth Amendment - Right Against Self-Incrimination

Plaintiff's third cause of action asserts in part that Defendants violated Plaintiff's Fifth

Amendment right against self-incrimination. (*FAC* at ¶¶ 108–109.) Plaintiff asserts that he was

retained in SHU because of his status as a validated gang member. Plaintiff asserts that the only

way to be released into GP is to debrief, which he asserts requires an inmate to implicate himself

as a gang member and inform prison authorities of illegal activities done by other gang members.

(*Id.* at ¶¶ 62–68, 109.) Plaintiff's argument is two-fold. First, he contends that debriefing as a

general matter violates the privilege against self-incrimination. Second, he contends that

debriefing violates the privilege against self-incrimination in his case because he was a pre-trial

detainee at the time of validation and the source items used to validate him as a gang member were

items he would be forced to discuss during debriefing, which would incriminate him in his

criminal case. (*FAC* at ¶ 65, 73; *Pl.'s Opp'n* at 6–9.)[2]

The Fifth Amendment provides that no person "shall be compelled in any criminal case to

be a witness against himself." U.S. Const. amend. V. Courts have consistently held that the

---

[1]In his opposition, Plaintiff appears to contend that his retaliation claim is based on two acts. First, he contends that the gang validation itself was retaliatory conduct. Second, he contends that the cancellation of his transfer to GP was retaliatory conduct. (*Pl.'s Opp'n* at 3.) Plaintiff, however, fails to make this distinction in his FAC. It appears from how Plaintiff has pled his cause of action, Plaintiff's retaliation claim is based solely on Defendants' cancellation of Plaintiff's transfer to GP. Should Plaintiff attempt to amend his retaliation claim to clarify that he is asserting his claim on the basis of the gang validation as well, Plaintiff must allege facts that support the element of causation. Specifically, Plaintiff must allege facts that Defendants' gang validation was retaliation for Plaintiff's prior protected activity. As Plaintiff's allegations are currently pleaded, the Court finds no basis to infer that the gang validation was retaliatory for Plaintiff's protected activity.

[2]Although it is not entirely clear, it appears from the FAC that Plaintiff was convicted on only some of the charges against him. Plaintiff is currently appealing his criminal conviction.

1   process of debriefing does not implicate the Fifth Amendment because "the primary purposes of

2   debriefing are to test the sincerity of the inmate's gang renunciation and to gather information

3   about gang activities." *Medina v. Gomez*, 1997 U.S. Dist. LEXIS 12208, at *16 (N.D. Cal. Aug.

4   14, 1997). Moreover, inmates are not advised of their *Miranda* rights during debriefing. Thus, any

5   information obtained from the inmate could not be used against him in a criminal proceeding. *See*

6   *Castaneda v. Marshall*, 1997 U.S Dist. LEXIS 4612, at *23–*24 (N.D. Cal. March 10, 1997)

7   (*citing Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); *Taylor v. Best*, 746 F.2d 220, 224 (4th Cir.

8   1984). The Court also notes that Plaintiff alleges that he cannot debrief because he has no

9   knowledge of any EME activities. (*FAC* at ¶ 68.) Thus, he has no standing to complain that the

10  debriefing process is a violation of his constitutional rights. *See Stoianoff v. Montana*, 695 F.2d

11  1214, 1223–24 (9th Cir. 1983).

12          Finally, it is not clear to the Court that Plaintiff has suffered injury to allege his Fifth

13  Amendment claim. Plaintiff merely asserts that he has a "reasonable expectation that initiating a

14  debriefing interview conducted by defendants agents will involve some or all aspects of that in-

15  custody offense because that incident was reported in source item No.1 . . . ." (FAC at ¶ 65.)

16  Plaintiff has not alleged that he attempted to debrief and was asked questions about the underlying

17  criminal charges. Nor has Plaintiff alleged any other basis for his "expectation" that Defendants

18  will inquire about the subject matter of his criminal conviction. It appears to the Court that

19  Plaintiff's "expectation" is based on pure speculation. In order to establish Article III standing, a

20  plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized

21  and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

22  challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

23  injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl.*

24  *Servs., Inc.,* 528 U.S. 167, 180-81 (2000). While Plaintiff attempts to characterize his injury as his

25  retention in SHU, the Court finds that this injury is traceable only to Plaintiff's conduct, not

26  Defendants' conduct. Plaintiff has not alleged any facts to demonstrate that debriefing would lead

27  to actual or imminent harm. Moreover, Plaintiff's assertion that self-incrimination would result is

28  mere conjecture because he offers no facts upon which he bases his claim that he would be

required to incriminate himself. Accordingly, the Court **GRANTS** Defendants' motion and

**DISMISSES** Plaintiff's cause of action under the Fifth Amendment **with leave to amend**.

**IV.     Violation of Sixth Amendment - Right to Counsel**

Plaintiff's third cause of action also asserts that Defendants violated Plaintiff's Sixth

Amendment right to counsel. (*FAC* at ¶¶ 108–109.) Plaintiff's claim is essentially the same as his

claim under the Fifth Amendment. Plaintiff contends that requiring him to debrief would implicate

his right to counsel because the information he would be forced to divulge relates to the criminal

charges that are currently on appeal, for which he has appointed counsel. (*Id.* at ¶¶ 64–67;

108–109.)

The Sixth Amendment guarantees that "[in] all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

"[C]ases have long recognized that the right to counsel attaches only at or after the initiation of

adversary judicial proceedings against the defendant." *United States v. Gouveia*, 467 U.S. 180, 188

(1984). The Supreme Court has held that because the right to counsel applies only in judicial

proceedings, the right does not extend to prison disciplinary proceedings. *Baxter v. Palmigiano*,

425 U.S. 308, 315 (1976). Moreover, the Ninth Circuit has refused to extend the right to counsel to

administrative segregation. *United States v. Mills*, 810 F.2d 907, 909 (9th Cir. 1987) (*citing United

States v. Gouveia*, 467 U.S. 180 (1984)). It is true that Plaintiff does have the right to counsel on

appeal. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). As already noted, however, Plaintiff has

not identified any facts that support his "expectation" that he will be required to divulge any

information related to his criminal charges. Moreover, just like any information disclosed that

incriminates Plaintiff would be suppressed in an attempt of subsequent use under *Miranda*, that

information would also be suppressed under the *Massiah* doctrine if authorities attempted to use it

against Defendant in his criminal action. *See Massiah v. United States*, 377 U.S. 201, 205 (1964).

Finally, as already noted, Plaintiff has no standing to complain that the debriefing process is a

violation of his constitutional rights because he contends he has no knowledge of any EME

activities. For these reasons, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's

claim under the Sixth Amendment **with leave to amend**.

## V.      Violation of Eighth Amendment - Cruel and Unusual Punishment

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by: (1) placing Plaintiff in SHU "despite their knowledge that plaintiff is not an active member or associate of EME" and only allowing him to leave SHU upon debriefing; (2) using debriefing as a means to physically coerce inmates to volunteer information; (3) being deliberately indifferent to the dangers of debriefing; and (4) exposure to inhumane conditions in SHU. (*FAC* at ¶¶ 112–120.)

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). As a general matter, prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eight Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoners' interest or safety."  *Whitely v. Albers*, 475 U.S. 312, 319 (1986) (internal quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must show: (1) the deprivation he suffered was "objectively, sufficiently serious;" and (2) prison officials were deliberately indifferent to his safety in allowing the deprivation to take place. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally, in order to show causation between the deliberate indifference and the Eighth Amendment deprivation, a prisoner must demonstrate the individual defendant was in a position to take steps to avert the harm, but failed to do so intentionally or with deliberate indifference. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). This inquiry requires "a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Id.* at 633–34. Thus, a prison official may be liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that an inmate faces a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837–45.

As a whole, Plaintiff's allegations are insufficient to support a claim that Defendants' actions resulted in the infliction of cruel and unusual punishment. Specifically, the FAC contains no facts which indicate that Plaintiff was deprived of life's necessities or that he was otherwise subjected to a "substantial risk of harm." *Id.* First, Plaintiff's contention that the option of debriefing is cruel and unusual punishment is without merit. As already noted, debriefing is a voluntary option in order to receive more lenient treatment. Plaintiff does not identify how the process of debriefing to receive more lenient treatment deprives Plaintiff of life's necessities or otherwise constitutes cruel and unusual punishment. The Court notes that Plaintiff's claim that debriefing violates his Eighth Amendment rights appears to hinge in part on his Fifth And Sixth Amendment arguments. But as already explained, Plaintiff has not adequately alleged violations of either the Fifth or Sixth Amendment. The compelled disclosure of information, alone, is not sufficient to state a claim for cruel and unusual punishment. Plaintiff also contends that Defendants are deliberately indifferent to the dangers of debriefing. In particular, Plaintiff takes issue with what will become of him if he debriefs. (*See, e.g.*, *FAC* at ¶¶ 71–72.) The mere possibility that Plaintiff might be attacked or placed in an undesirable housing unit if he chooses to debrief, even if Defendants encouraged him to debrief, cannot, by itself, form the basis of an Eighth Amendment claim.

Finally, Plaintiff asserts that his assignment to SHU alone constituted cruel and unusual punishment. In particular, Plaintiff asserts that by placing him in SHU, Defendants deny Plaintiff privileges afforded to inmates housed in GP. (*FAC* at ¶¶ 98–100.) Plaintiff also identifies various psychological effects he has and will continue to suffer from as a result of his confinement in SHU. The simple placement and retention of a plaintiff in segregated housing, even for an indeterminate period of time, does not in and of itself implicate the Eighth Amendment. *Toussaint v. Yockey*, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984). Moreover, "[t]he Eighth Amendment simply does not guarantee that inmates will not suffer some psychological effects from incarceration or segregation." *Madrid v. Gomez*, 889 F. Supp. 1146, 1264 (N.D. Cal. 1995). The Court, however, in *Madrid* held that inmates who are mentally ill, as well as inmates with borderline personality disorders, brain damage or mental retardation, impulse-ridden personalities, or a history of prior

1  psychiatric problems or chronic depression, could potentially establish a claim under the Eighth

2  Amendment for indefinite confinement in SHU. 889 F. Supp. at 1265–1266. As the Court

3  explained,

4      subjecting individuals to conditions that are 'very likely' to render them psychotic or
       otherwise inflict a serious mental illness or seriously exacerbate an existing mental

5      illness can not be squared with evolving standards of humanity or decency, especially
       when certain aspects of those conditions appear to base very little relation to security

6      concerns.

7  *Id.* at 1266. Plaintiff asserts that he was prescribed psychotropic medication for symptoms of

8  "physical and mental pain and suffering" when he was incarcerated in another prison's SHU. (*FAC*

9  at ¶ 102.)  Plaintiff, however, provides no facts regarding his mental health and the effect of the

10 medication on his conditions. Indeed, it appears that Plaintiff's asserted mental pain and suffering

11 is more the result of his consternation over the consequences of debriefing verses the

12 consequences of remaining in SHU rather than his placement in SHU itself. Plaintiff simply fails

13 to allege any facts to demonstrate that his placement in SHU threatens his personal safety or

14 exposes him to a substantial risk of serious harm. Accordingly, the Court **GRANTS** Defendants'

15 motion to dismiss and **DISMISSES** Plaintiff's Eighth Amendment claims **with leave to amend**.

16 **VI.    Violation of Fourteenth Amendment - Equal Protection Clause**

17         Plaintiff's tenth cause of action asserts that Defendants denied Plaintiff equal protection by

18 "intentionally discriminating against him on the basis of his racial group." (*FAC* at ¶¶ 123–124.)

19 The Equal Protection Clause requires that persons who are similarly situated by treated alike. *City*

20 *of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A plaintiff may establish

21 an equal protection claim by showing that the defendant has intentionally discriminated on the

22 basis of the plaintiff's membership in a protected class, *Lee v. City of Los Angeles*, 250 F.3d 668,

23 686 (9th Cir. 2001), or by showing that similarly situated individuals were intentionally treated

24 differently without a rational relationship to a legitimate state purpose, *Village of Willowbrook v.*

25 *Olech*, 528 U.S. 562, 564 (2000).

26         Defendants assert that Plaintiff's equal protection claim should be dismissed because

27 Plaintiff fails to allege that Defendants carried the requisite subjective intent or treated Plaintiff

28 differently because of his race. (*Defs.' Mot. to Dismiss* at 9:27–10:6.) The Court agrees. Although

Plaintiff alleges that his right to equal protection was violated, the FAC is devoid of any facts that would support an equal protection claim. Accordingly, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES** Plaintiff's equal protection claim **with leave to amend**. The Court notes that if Plaintiff attempts to amend this claim, he must allege facts that he was treated differently because of his race, not because of his status as an active gang member.

## VII.    Violation of Fourteenth Amendment - Due Process Clause

Plaintiff asserts that Defendants violated the rights guaranteed to him under the Due Process Clause of the Fourteenth Amendment by placing him in SHU on the basis of a dubious gang validation. (*FAC* at ¶¶ 125–127.) Defendants assert that Plaintiff's claim must be dismissed because he has not demonstrated that his confinement in SHU implicated a liberty interest protected by the Due Process Clause, and even if it did, Plaintiff's gang validation satisfied due process. (*Defs.' Reply* at 4:8–5:10.)

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (administrative segregation falls within the terms of confinement originally contemplated by a sentence). A prisoner generally has no liberty interest in avoiding transfer to more restrictive conditions of confinement, such as a transfer from the general population to segregation, unless he can show an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court considered three factors in determining whether the plaintiff possessed a liberty interest in avoiding disciplinary segregation: (1) the disciplinary versus discretionary nature of the segregation; (2) the restricted conditions of the prisoner's confinement and whether they amounted to a "major disruption to his environment" when compared to those shared by prisoners in the general population; and (3) the possibility of whether the prisoner's sentence was lengthened by his restricted custody. 515 U.S. at 486–87.

Courts have found the existence of atypical and significant hardships in a very limited scope of cases. *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221–24 (2005) (holding inmates' liberty interests were implicated by their indefinite confinement in highly restrictive "supermax"

prison, where the inmates were deprived of almost all human contact and were disqualified from parole consideration); *Serrano v. Francis*, 345 F.3d 1071, 1078–79 (9th Cir. 2003) (placing disabled inmate, without his wheelchair, in segregation unit not equipped for disabled persons gave rise to a liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (directing district court to consider two-year duration of administrative segregation in determining whether placement imposed atypical and significant burden). "A liberty interest does not arise even when administrative segregation imposes severe hardships, such as denial of access to vocational, educational, recreational, and rehabilitative programs, restrictions on exercise, and confinement to a cell for lengthy periods of time." *Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986) (internal quotations omitted).

Here, Plaintiff has not alleged that his confinement in administrative segregation imposes a significant and atypical burden. While he notes general hardships he suffers as a result of his confinement in SHU, these types of burdens do not give rise to a liberty interest. *Id.* Thus, Plaintiff has failed to establish a liberty interest protected by the Constitution because he has not alleged, as he must under current law, facts related to the conditions or consequences of his disciplinary segregation which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. Accordingly, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES** Plaintiff's due process claim **with leave to amend**.

## VIII.   Conspiracy

Plaintiff's fourth cause of action alleges that Defendants Gentry, Tyree, Parilla, Stratton, Tamayo and Does conspired to deprive Plaintiff of his constitutional rights. (*FAC* at ¶¶ 110-111.) To prove a conspiracy in violation of 42 U.S.C. § 1983, plaintiff must allege facts to establish: (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy; and (3) a constitutional violation. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999); *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents*,  673 F.2d 266, 268 (9th Cir. 1982); *Aldabe v. Aldabe*,  616 F.2d 1089, 1092 (9th

Cir. 1980) (conclusory allegations of conspiracy insufficient to support a claim under section 1983 or 1985). Here, Plaintiff has failed to allege any facts that show an agreement or meeting of the minds to violate any of his constitutional rights. *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989); *Aldabe*, 616 F.2d at 1092. In addition, while Plaintiff alleges conduct by several of these Defendants, the facts alleged do not suggest any agreement or meeting of the minds to violate any constitutional rights. Moreover, Plaintiff must allege that a constitutional violation occurred. Plaintiff has sufficiently alleged only one constitutional violation, that is, his retaliation claim. But Plaintiff has not alleged any facts to support that the Defendants identified in his conspiracy claim played any role in cancelling Plaintiff's transfer to GP. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's conspiracy claims **with leave to amend**.

## IX.   Supervisory Liability

Plaintiff's thirteenth cause of action alleges that supervisory Defendants failed to lawfully administer, train, and supervise subordinate employees. (*FAC* at ¶¶ 130–135.) Defendants assert that Plaintiff fails to state a claim for supervisory liability because Plaintiff has not alleged any causal connection between the supervisory Defendants and his constitutional claims. (*Defs.' Mot. to Dismiss* at 12:1–28.)

Liability for a civil rights violation under Section 1983 may not be based on a theory of respondeat superior. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 693 (1978). "Liability under § 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, "a supervisory official, such as a warden, may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Henry v. Sanchez*, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996). For there to be a sufficient causal connection, the official must have known of a constitutional violation; it is not enough to claim that an official should have known of a constitutional deprivation because of a complaint brought through the prison appeals system. *Barry v. Ratelle*, 985 F. Supp. 1235, 1239 (S.D. Cal. 1997).

Here, Plaintiff alleges that supervisory Defendants failed to adequately train their subordinates. (*FAC* at ¶¶130–135.) Plaintiff also alleges that the supervisory Defendants failed to "properly train, supervise, and follow implementation of Castillo changes . . . ." (*Id.* at ¶¶ 23.) Plaintiff, however, fails to go beyond these broad statements of supervisory liability as to Defendants Cate or Stratton. Plaintiff does not allege these particular Defendants were personally involved in any of the alleged constitutional violations. Further, Plaintiff fails to allege any causal connection between these Defendants and the alleged constitutional violations. As such, Plaintiff's constitutional claims against Defendants Cate and Stratton are based on a theory of respondeat superior, which does not create liability under Section 1983. *Monell*, 436 U.S. at 693.

The Court, however, is satisfied that Plaintiff's allegations against all other Defendants are not based on respondeat superior liability, but rather, are based on those Defendants' individual actions and their involvement in the validation of Plaintiff as a gang member. Accordingly, the Court **GRANTS IN PART** Defendants' motion to dismiss Plaintiff's constitutional claims against Defendants Cate and Stratton. While the Court is not convinced that Plaintiff could not successfully amend his claims against Defendant Stratton, the Court finds that it is not possible for Plaintiff to cure the deficiencies relating to Defendant Cate because Plaintiff alleges liability against him solely based on his role as a supervisory, which is a claim based on respondeat superior and not viable under Section 1983. Accordingly, Plaintiff cannot cure this legal deficiency, and therefore amendment of Plaintiff's claims against Defendant Cate would be futile. Accordingly, the Court **DISMISSES** Plaintiff's claims against Defendant Stratton **with leave to amend**, but **DISMISSES** those claims against Defendant Cate **without further leave to amend**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss Plaintiff's First Amendment Complaint. Plaintiff's retaliation claim against Defendants Scribner and Ochoa are permitted to proceed, however, the Court **DISMISSES** all other claims. Plaintiff is **GRANTED** forty-five (45) days leave from the date this Order is "Filed" in which to file a Second Amended Complaint which cures all the deficiencies of pleading noted above. Plaintiff's Amended Complaint must be complete in itself without reference to the

superseded pleading. *See* S.D. Cal. Civ. L. R. 15.1. Defendants not named and all claims not re-alleged in the Amended Complaint will be deemed to have been waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Further, if Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, it may be dismissed without further leave to amend. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

**IT IS SO ORDERED**.

DATED:  August 27, 2010

Hon. Michael M. Anello
United States District Judge

08CV2109-MMA (CAB)